### RICHARDS v. SECURITY MUT. LIFE INS. CO.

(District Court, N. D. New York. July 10, 1919.)

1. CONSTITUTIONAL LAW ⊂⊃154(3) — INSURANCE ⊂⊃53 — STATUTE AUTHORIZING REINCORPORATION OF LIFE COMPANIES—CONSTITUTIONALITY.

Laws N. Y. 1898, c. 85, authorizing the reincorporation thereunder of domestic life insurance companies doing business on the stipulated premium plan, but providing that each reincorporation "shall in no way annul, modify or change any existing contract, contracts or liabilities of such existing corporation," is not unconstitutional as impairing the obligation of contracts.

2. INSURANCE ⊂⊃193(2)—LIFE INSURANCE—INCREASE OF PREMIUMS BY ASSESSMENT COMPANY—LEGALITY.

Under a policy or contract issued by a life insurance association doing business on the assessment or co-operative plan requiring payment of a stated annual premium, but providing that "by action of the board of directors the amount required for mortuary purposes may be varied to conform to the actual mortuary experience of the association," an increase in premium rates is not in violation of the contract, and affords no ground of action by the policy holder, unless it is shown not to conform to the mortuary experience of the association.

In Equity. Suit by Albin M. Richards against the Security Mutual Life Insurance Company. On motion by complainant to continue temporary injunction and motion by defendant to dismiss. Complainant's motion denied, and motion to dismiss granted.

Application by the plaintiff Albin M. Richards, to continue a temporary injunction, and motion by defendant to dismiss the complaint for want of jurisdiction, and on the ground the complaint does not state a cause of action.

Geo. A. Kernan, of Utica, N. Y., for plaintiff.
H. D. Hinman, of Binghamton, N. Y., for defendant.

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

RAY, District Judge. The plaintiff, a citizen of the state of Massachusetts, in behalf of himself and all others having contracts of insurance similar to his own, brings this action in equity against the defendant, a corporation of the state of New York, and demands: (1) That defendant be enjoined from collecting any sum in excess of $92.55 as yearly premium upon a policy of life insurance held by him and issued by the security Mutual Life Association, excusing him from making any further payments of premiums until the rights of the parties are determined, and protecting him in the meantime from a forfeiture of his policy for nonpayment of premiums; (2) an accounting of the assets of defendant prior to the alleged wrongful attempt of defendant to change its charter and determine the amount of such assets and segregate same from other assets of the defendant; (3) that defendant be decreed specifically to perform its contract of insurance with plaintiff; (4) that defendant be enjoined from increasing or attempting to increase the amount of annual premiums to be paid by plaintiff; (5) that defendant be enjoined from refusing to accept the sum of $92.55 specified in the policy of insurance as the annual premium to be paid; (6) that defendant be required to account to plaintiff for all sums heretofore collected by it from the plaintiff in excess of $92.55 per annum, and pay same to the plaintiff with interest; (7) that an account be taken to demonstrate and determine what amount of premium shall be charged, demanded, and paid April 25, 1919, and annually subsequently; (8) that an account be taken of overcharges heretofore made and paid and a decree made for repayment with interest; (9) that a receiver be appointed to take charge of such assets of defendant as may be found to be properly held for the benefit of the plaintiff and others having similar policies, and administer same for the benefit of such policy holders; and (10) for such other relief as plaintiff may be entitled to. Are the allegations of the complaint, assuming them to be true, such as to entitle the plaintiff to any of the relief demanded?

The Security Mutual Life Association was incorporated in 1886, under the provisions of chapter 175 of the Laws of New York, 1883, as a co-operative and assessment company, and down to 1898 did business under the assessment and co-operative plan only. In 1895, the plaintiff applied in writing to that association for membership therein and insurance accordingly. This application was favorably acted upon, and plaintiff was received into membership, and the association issued to him a policy of insurance which, with the application, constitutes a contract, and which contains the following:

"The Security Mutual Life Association of Binghamton, N. Y. In consideration of the application for this policy, which is made a part of this contract and the payment in advance of ninety-two dollars and fifty-five cents and of the further advance payment of ninety-two dollars and fifty-five cents to be made on or before the twenty-fifth day of April in every year during the continuance of this contract, the Security Mutual Life Association does hereby receive Albin M. Richards of Cambridgeport, county of Middlesex, state of Massachusetts, as a member of said association, and issues this policy subject to the conditions and with the benefits hereon indorsed, which are made a part of this contract, and within thirty days from the receipt of

satisfactory evidence to the association of the death of the above-named member, during the continuance of this policy in full force and effect, promises to pay to Albin L. Richards, his son, if living at the time of such death; otherwise to the legal representatives of the deceased, the sum of five thousand dollars upon presentation and surrender of this policy, properly receipted, less the balance (if any) of the advance payments for the current year of the death of the insured, and any indebtedness of the insured or beneficiary to the association."

There was also a provision that in case payments were not made the policy should be or became void. One of the privileges and conditions referred to in, indorsed on, and made a part of such contract or policy of insurance reads as follows:

"This contract of insurance is renewable at the option of the insured, before expiration, upon payment of the advance premiums, at the time and in the manner herein provided, subject to the provision, that by action of the board of directors, the amount required for mortuary purposes may be varied to conform to the actual mortuary experience of the association. Any surplus in the mortuary fund in excess of one hundred thousand dollars, and beyond the amount deemed necessary to provide for increased age shall be credited in reduction of premiums. Any deficiency in the mortuary fund may be made good from the reserve fund. After ten years from the date of this policy and while it is in full force the association will annually thereafter determine and credit the insured with an equitable proportion of the surplus in the reserve fund in excess of the amount required to be held by law which amount shall not be less than one hundred thousand dollars. The dividends so apportioned shall be available as follows."

Then follows the statement as such application of such moneys.

In 1898, the said Security Mutual Life Association reincorporated under the name Security Mutual Life Insurance Company, and as a stipulated premium company under the provisions of chapter 85, Laws of New York of 1898. Attached to the bill of complaint is a certificate of the superintendent of insurance of the state of New York to the effect that all the proceedings to effect such reincorporation were regular and in accordance with the provisions of the statutes of the state of New York.

In 1911, the Security Mutual Life Insurance Company undertook to vary the amount which the plaintiff and others similarly situated should be required thereafter to pay annually on his certificate of membership or life policy by increasing the amount to be paid, and did increase the amount to be paid annually, and has annually demanded and required payment of such increased amount, the amount demanded each year, since 1911, being higher or greater than said sum of $92.55 mentioned in the policy.

On the argument the plaintiff contended: (A) That defendant company had no power, in view of the statutes and policy to increase the said amount so to be paid annually; and (B) that, if under the law it had such power, it had not complied with the statutory requirements to make such attempted increases valid and binding, and that its action in such regard are of no binding force, but are illegal and void. Down to 1911, the plaintiff paid the amount annually specified in such policy, and since that time on demand, but protesting, has paid the increased sums demanded. In 1911, he paid $123.55; in 1912, $131.-

**35;** in 1913, $140; in 1914, $149.60; in 1915, $160.20; in 1916, $241.80; in 1917, $282.15; and in 1918, $139.40. It is not alleged in the complaint that these changes in the amount of payments required were not justified and made necessary to conform to the actual mortuary experience of the association. It is not alleged that there has been any concealment or misappropriation or diversion of the funds of the association, except it is alleged that:

"In complete violation and disregard of the rights of this plaintiff and others having similar policies a majority of the directors of the said Security Mutual Life Association caused $100,000 of the assets of said association to be deposited with the superintendent of insurance of the state of New York in compliance with the terms of said statute, secured the consent of the superintendent of insurance to the reorganization, or amendment of the charter of the said corporation, adopted a new and different charter from that in force at the time the plaintiff became a member of the corporation, changed the name of the corporation from its former to its present name, and otherwise violated and disregarded the rights of this plaintiff."

[1] It is not alleged or charged that these acts were done in violation or disregard of the statute of the state of New York authorizing them (chapter 85, Laws of New York 1898), but that the statute itself was and is unconstitutional and void, and a violation of section 10, article 1, of the Constitution of the United States, in that such statute impairs the obligation of the plaintiff's contract, and deprives him and others having similar contracts of insurance of their property without due process of law, and in violation of the Fourteenth Amendment to the Constitution of the United States.

Chapter 85, Laws of New York 1898, is an act entitled "An act to amend the insurance law, relating to life insurance corporations on the stipulated premium plan," and section 303 reads as follows:

"Any domestic corporation, association or society, existing or doing business at the time this article takes effect, may, by vote of a majority of its board of directors or trustees, accept the provisions of this article, and amend its charter to conform with the same upon obtaining the consent of the superintendent of insurance, thereto, in writing, and thereafter it shall be deemed to have been incorporated under this article; and every such corporation, association or society, in reincorporating or qualifying under the provisions of this article, shall, for that purpose, so adopt, in whole or in part, a new charter in conformity herewith, so as to cover and enjoy any and all the provisions or privileges of existing laws, which might be included and enjoyed, if it was originally incorporated hereunder; and it shall, upon such adoption of and after obtaining the consent, as in this section provided, to such charter, filing the same with the record of adoption and consent in the office of the superintendent of insurance perpetually enjoy the same as, and be, such corporation, and which is hereby declared to be a continuation of such corporation which existed prior to such reincorporation, and the offices therein which shall be continued shall be filled by the respective incumbents for the periods for which they were elected, and all others shall be filled in such manner as shall be provided in such amended charter. The reincorporating or qualifying of any existing domestic corporation, association or society under the provisions of this article shall in no way annul, modify or change any existing contract, contracts or liabilities of such existing corporation, association or society; and any and all such contracts and liabilities shall continue in full force and effect the same as though such corporation, association or society had not reincorporated or qualified under this article.

Neither shall the reincorporating or qualifying of any such corporation, association or society, under the provisions of this article, in any way prejudice, impede or impair any pending action or proceeding, or any rights previously accrued."

I am not able to see how the reincorporation of this company in any way injured the plaintiff here or any other person similarly situated, inasmuch as by way of impairing the obligations of the contracts of insurance the section quoted expressly provides that the reincorporation and qualifying under the statute "shall in no way annul, modify or change any existing contract, contracts or liabilities of such existing corporation, association or society and any and all such contracts and liabilities shall continue in full force and effect the same as though said corporation, association or society had not reincorporated or qualified under this article."

It is plain that the plaintiff's contract is not impaired or changed. The new corporation is bound by it the same as was the old one. The statute of 1898 so expressly provides. It is true that under this statute $100,000 was to be deposited, etc., and that same was deposited. This was done pursuant to section 301 of the act, which provides, amongst other things, that—

"No such corporation shall commence the business of insurance until * * * such corporation has deposited with the insurance department of the state of New York one hundred thousand dollars, in such securities as are required by law to be deposited by insurance corporations; and the superintendent of insurance shall have further certified that it has complied with the provisions of this article and is authorized to transact the business of insurance. The securities deposited with the insurance department, pursuant to this section, shall be held by the superintendent in trust for the benefit and protection, and as security for the policy holders of the corporation, their legal representatives and beneficiaries."

This money deposited or the securities is to be held by the superintendent of insurance in trust for the benefit and protection and as security for the policy holders and their representatives. It is a reserve fund. In no sense does this constitute a wrongful withholding or misapplication of the funds of the corporation. There is no fraud or concealment.

[2] There are statements made in the bill of complaint such as—

"The increases demanded by the defendant are not such reasonable increases but are unreasonable and confiscatory."

This is a mere conclusion, and is not based on any allegation of facts showing that the defendant company is demanding or has demanded more money from its members than is necessarily required to meet the actual mortality experience of the company. It is not alleged that the death rate of members has not largely increased, and to such an extent as to require the increase demanded. Want of honesty and good faith is not claimed, and there is no allegation of fraud. It is not alleged that there is any discrimination against plaintiff. So far as appears all members are treated alike. There is no allegation or claim of insolvency in this case. It would be intolerable

to subject an insurance company to an action for an accounting on such allegations as are found in this bill of complaint, unless it is first found that the statute under which the association reincorporated and thereafter acted is unconstitutional, so as to make all the proceedings as to reincorporation and subsequent acts unlawful. I am of the opinion that, in view of the decision of the Supreme Court of the United States in Equitable Life Assurance Society of the United States v. Brown, 213 U. S. 25, 29 Sup. Ct. 404, 53 L. Ed. 682, no cause of action for an accounting is stated in the bill of complaint. This action is based on the theory: First. That the Security Mutual Life Association of Binghamton, N. Y., could not reincorporate and proceed to do business when so reincorporated, inasmuch as the statute under which such action was had was unconstitutional and void. If this contention fails, the whole action fails so far as that point is concerned. Secondly, it is claimed that the contract of insurance, providing for the payment of $92.55 as yearly premiums, must control, and that the association, whether reorganized and reincorporated or not, could not and cannot increase the amount of the yearly premiums. This last theory ignores the provision in the contract that such yearly premiums may be increased under the conditions named and to which attention has been called. It seems to me that Polk v. Mutual Reserve Fund Life Association of New York, 207 U. S. 310, 28 Sup. Ct. 65, 52 L. Ed. 222; Wright v. Minnesota Mutual Life Ins. Co., 193 U. S. 657, 24 Sup. Ct. 549, 48 L. Ed. 832; Supreme Lodge, Knights of Pythias, v. Mims, 241 U. S. 574, 36 Sup. Ct. 702, 60 L. Ed. 1179, L. R. A. 1916F, 919; Haydel v. Mutual Reserve Fund Life Association (C. C.) 98 Fed. 200; Haydel v. Mutual Reserve Fund Life Association, 104 Fed. 718, 44 C. C. A. 169, etc., dispose of this case adversely to the contention of the plaintiff.

It seems to me that taking the entire contract in connection with the statutes under which the association was incorporated, the certificate of membership is not "a level premium," whole life policy, but an "assessment contract." When the application was made and the certificate issued this association was doing business as an assessment or co-operative life insurance association. The bill of complaint alleges it was organized under chapter 175, Laws of New York 1883. Again the provision fixing the annual rate at $92.55 was subject to the condition that "the amount required for mortuary purposes may be varied to conform to the actual mortality experience of the association."

These assessments are required for mortuary purposes, and have been varied to conform to the actual mortuary experience of the association. There is no allegation to the contrary. The claim is that the amount specified in the contract to be paid annually cannot be increased for any purpose or under the clause referred to. I do not think this contention well founded. I cannot discover any substantial ground on which to base a claim that the statute of the state of New York providing for reincorporation is unconstitutional. I think this court on this motion may decide that question. The claim of unconstitutionality of the statute presents no question of evidence or disputed fact, but one of law. The facts are not in dispute. The contract,

application for membership, and certificate of membership, or policy of insurance are all in writing. Their proper construction and legal effect are for the court. The action taken on reincorporation is not in dispute. The increases in payments demanded and made are conceded. As the court is of the opinion that the act of the Legislature of the state of New York, the constitutionality of which is questioned, was and is constitutional and valid, that the proceedings under it were regular and legal, and that the contract authorized the increases demanded, the motion to continue and make permanent during the pendency of the action the temporary injunction herein heretofore granted should be denied, and the motion to dismiss the complaint on the ground no cause of action is stated should be granted.

So ordered.